## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BECKHAM COUNTY RURAL WATER DISTRICT NO. 3, and UNITED STATES DEPARTMENT OF AGRICULTURE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-05-1485-F |
| CITY OF ELK CITY, an Oklahoma City municipality, and ELK CITY PUBLIC WORKS AUTHORITY, a public trust, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

The United States Department of Agriculture's motion to dismiss, filed December 8, 2006, is before the court.  (Doc. no. 31.)  All parties have responded to the motion, and it is ready for determination.  For purposes of this order, Beckham County Rural Water District No. 3 is referred to as "the water district" or "the district."  The City of Elk City and the Elk City Public Works Authority are collectively referred to as "the city."  The United States Department of Agriculture is referred to as "the USDA."

### I. Background[1]

This action involves the legality of the activities of both sets of parties with respect to water sales and USDA loans to the water district.

---

[1]The information in this section is not intended as a definitive description of the issues, claims or parties.  Its only purpose is to provide context for the court's rulings.

The action is brought by the water district.  The district seeks to enjoin the city from selling water within its service area, and asks the court to declare that the city's sales violate 7 U.S.C. §1926(b).  Section 1926(b) provides that "service provided or made available" through a USDA loan to a water district association "shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan...."  For purposes of convenience only, this non-curtailment and non-limitation provision is sometimes referred to in this order as "the exclusivity provision" or as a provision which provides for "exclusive" sales within the water district's service area.  Based on its claims that the city's conduct violates the exclusivity provision of § 1926(b), the district seeks money damages and declaratory relief, and asks the court to impose a constructive trust on the city's water lines and facilities to the extent those facilities serve residents within the water district's service area.

The city denies the water district's right to relief, alleging a large number of defenses including invalidity of the loan agreements between the water district and the USDA.   The city also alleges counterclaims.  Originally, the city's counterclaims were alleged only against the water district.  However, with the joining of the USDA as a necessary party with respect to the city's claims as they were originally alleged in the now closed mirror action, and with the consolidation of the two actions, the city's counterclaims now stand as alleged against the water district and the USDA.[2] The city's counterclaims can be grouped into two sets of counterclaims: counterclaims based on allegations that the loans between the water district and the

---

[2]See order in mirror action CIV-06-0035 at doc. no. 22 joining USDA; orders of consolidation at doc. nos. 29, 30 in the instant action and at doc. no. 37 in mirror action; and order re-aligning USDA as a party plaintiff at doc. no. 49 in the instant action.

USDA are void and unenforceable, and counterclaims based on the city's allegations that the water district and the USDA should be required to fulfill certain graduation requirements with respect to the loans.  Based on these counterclaims, the city seeks a variety of declarations and other non-monetary relief from the district and the USDA.  Among other things, the city seeks a declaration that the loan agreements between the water district and the USDA are void and unenforceable; a declaration that the USDA must perform its duties with respect to the graduation requirements, including a declaration that the loans should be retired or refinanced; dissolution of the water district; and appointment of a receiver to manage the district.

## II.  The USDA's Motion to Dismiss

### A.  Clarifications

Before addressing the substance of the USDA's motion, it is necessary to make a few clarifications.

First, the USDA's motion to dismiss is entitled: "Third-Party Defendant USDA's Motion to Dismiss the Petition of City of Elk City and Elk City Public Works Authority or in the Alternative, Motion for Briefing Schedule."  Subsequent to the filing of the motion, however, the USDA was re-aligned by the court as a plaintiff in this action.  Accordingly, the motion is now brought by the USDA as a plaintiff rather than by the USDA as a third-party defendant.

Second, the motion should be corrected insofar as it asks the court to dismiss "the Petition of the City of Elk City and Elk City Public Works Authority."  Although the title and briefing of the motion refer to dismissal of the city's "petition," it is not, in actuality, the city's "petition" which the motion seeks to dismiss because no

petition or complaint was ever filed by the city in this action; rather, the court construes the motion as asking for dismissal of the city's counterclaims.[3]

Third, the caption of the motion shows the parties as reversed. When this order refers to plaintiffs and defendants it refers to the parties as they appear in the correct caption, that is, with the water district and the USDA as plaintiffs and with the city (municipality and public works authority) as defendant.

Fourth, the motion does not state under which rule of the Federal Rules of Civil Procedure it is brought. As the motion argues that the United States has not waived its sovereign immunity and that other jurisdictional requirements for suit on the city's counterclaims have not been met, the court construes the motion as brought under Rules 12(b)(1) and (6), Fed. R. Civ. P.

Fifth and finally, the court notes that the motion has two parts. The first part requests dismissal of the city's counterclaims. Alternatively, the second part requests a separate briefing schedule with respect to claims involving the USDA. The city has filed a separate brief in response to the second part of the motion, and the water district has also responded to that aspect of the motion. However, as will be seen, the court's ruling on the motion to dismiss moots the second part of the motion and so this order does not address that request.

## B.  Standards

In determining a motion to dismiss under Rules 12(b)(1) and (6), courts must accept as true all well-pleaded facts and view those facts in the light most favorable to the non-moving party.  Sutton v. Utah State Sch. for Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  The court must construe the plaintiffs' allegations

---

[3]The confusion presumably arises from the fact that it was the city's petition, filed in state court, which was removed to this court to become the basis of the complaint in the now closed mirror action.  The claims alleged in that petition are duplicated by the city's counterclaims in the instant action.

liberally because the rules require only general or notice pleading rather than detailed fact pleading, so as to do substantial justice.  United States v. Uvalde Consol. Indp. Sch. Distr., 625 F.2d 547, 549 (5th Cir. 1980).  A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The party invoking federal jurisdiction bears the burden of alleging facts sufficient to establish the elements of jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

## C.  Discussion

The USDA argues that various requirements for suit under the federal Administrative Procedures Act, 5 U.S.C. § § 551-706 ("the APA"), are not met by the city's counterclaims.  Specifically, the USDA argues that the city has failed to allege facts which, if proven, would show:  1) a specific and final agency action by the USDA; 2) exhaustion by the city of its remedies under the APA; and 3) standing on the part of the city to allege its counterclaims.  The USDA couches these arguments in its position that because the city has not met these requirements, the waiver of sovereign immunity otherwise provided by the APA does not apply.  Accordingly, this order begins with the more general aspects of the sovereign immunity issue.

## 1.  Sovereign Immunity Generally

The United States or its agencies can only be sued to the extent that the United States has waived its sovereign immunity.  United States v. Sherwood, 312 U.S. 584, 586 (1941).  Waiver of sovereign immunity must be unequivocally expressed in statutory text and will not be implied. Villescas v. Abraham, 311 F.3d 1253, 1256-57 (10th Cir. 2002).  A waiver of sovereign immunity will be strictly construed.  Id.

In this action, the USDA asserts that the only arguable waiver of immunity which might subject the USDA to suit on the city's counterclaims is found in the

APA.  The other parties do not dispute this contention and the court concurs.  Thus, the first issue raised by the USDA's motion to dismiss is whether, as a general proposition, the APA waives the USDA's sovereign immunity to the city's counterclaims.

Prior to the 1976 amendments to the APA, injunctive remedies against the United States were generally understood to be quite limited.  Robbins v. United States Bureau of Land Management, 438 F.3d 1074, 1081 (10th Cir. 2006), citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949) and United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir. 1996) (construing Larson).  The 1976 amendments to the APA, however, largely superseded these previously recognized restrictions on injunctive relief.  They did so by amending §702 of the APA to include the following language.

> An action in a court of the United States seeking relief other than money damages...shall not be dismissed nor relief therein be denied on the ground that it is against the United States.

5 U.S.C. § 702, quoted and discussed in Robbins, 438 F.3d at 1080.

The 1976 amendments to § 702 were intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendments.  Robbins, 483 F.3d at 1081, parenthetical description of holding in Bowen v. Massachusetts, 487 U.S. 879, 891-92 (1988).  More specifically, the 1976 amendments to § 702 of the APA eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity.  Robbins, 483 F.3d at 1081, parenthetical quotation from Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984). Here, the city's counterclaims seek only non-monetary relief against a U.S. agency for actions (or failures to act) taken (or not taken) in the agency's official capacity.

Accordingly, unless the city's counterclaims come within the exception to § 702 discussed next, the 1976 amendments provide the necessary waiver of sovereign immunity so as to allow the city's counterclaims to be alleged against the USDA, assuming other requirements for suit under the APA are met.

The exception to § 702's broad waiver of immunity is found in the third and final sentence of the 1976 amendments to that section.[4]  As that sentence provides, there is no waiver of immunity if another statute that grants consent for the United States to be sued either expressly or impliedly forbids the relief sought.  In other words, there is no waiver of immunity if another statute prohibits it.

In this action, the only statute (besides various requirements in the APA itself) which the parties have argued impliedly prohibits the United States from waiving its immunity under the APA, are provisions contained in the Agricultural Reorganization

_____

[4]Section 702 of the APA provides, in its entirety, as follows (emphasis added to show language added in 1976):

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Act, 7 U.S.C. §§ 6991 *et seq*.  Those arguments are based largely on Block v. Community Nutrition Institute, 467 U.S. 340, 349 (1984).  Block held that when a statute provides a detailed mechanism for judicial consideration of particular administrative decisions at the request of particular categories of persons (such as milk handlers or producers), judicial review of those decisions at the request of other categories of interested persons not named in the statute (such as milk consumers) may be impliedly precluded.

Block is factually distinguishable from the instant case.  Unlike the Agricultural Marketing Act at issue in Block, the provisions regarding the National Appeals Division in the Agricultural Reorganization Act, which the parties rely on in this case, do not define--and therefore do not implicitly exclude--particular categories of interested persons.  Additionally, Block relied heavily on the fact that the interests of persons eligible for judicial review under the Agricultural Marketing Act were aligned with those whose interests were not eligible for review.  The Court reasoned that allowing categories of interested persons who were not named in the Act to sue without exhausting remedies, would have provided a "convenient device" for escaping exhaustion requirements.  Block, 467 U.S. at 348.  These concerns do not apply to the instant case, where the interests  of the city are adverse to those of the water district.  Thus, the court rejects the USDA's and the water district's  arguments which are based on Block.

The USDA has not argued that the Tucker Act impliedly prohibits the United States from waiving its immunity in this case.  However, because the sovereign immunity issue is jurisdictional and likely cannot be waived, *see*, Cisneros v. Wilson, 226 F.3d 1113, 1118 (10th Cir. 2000), *overruled on other grounds*, (failure to include immunity defense in motion to dismiss did not waive sovereign immunity), the court has nevertheless considered that issue.   After careful consideration, the court

concludes that the Tucker Act does not impliedly prohibit the United States' waiver of sovereign immunity in this case.[5]

Accordingly, as a matter which is preliminary to consideration of the USDA's more specific arguments regarding its immunity to suit, the court concludes that the broad waiver of sovereign immunity provided by the 1976 amendments to §702 applies here, so that § 702 allows the city's counterclaims to be alleged against the USDA *if* the APA's other requirements for suit are met.

### 2. Finality, Specificity and Exhaustion

The other requirements for suit under the APA which the USDA argues are not established by the city's counterclaims are requirements that the city allege facts to show it is challenging a final and specific agency action, and facts showing that the city has exhausted any administrative remedies.  The actions (and inactions) of the

---

[5]The Tucker Act vests jurisdiction in the Court of Federal Claims for  monetary actions against the United States "founded...upon any express or implied contract." 28 U.S.C. § 1491(a)(1). The Little Tucker Act grants federal district courts concurrent jurisdiction over such contract claims where the plaintiff seeks less than $10,000 in damages.  28 U.S.C. § 1346(a)(2).  The Tucker Acts imply non-waiver of sovereign immunity for contract actions that seek specific performance.  That implied non-waiver is implicated here because the city's counterclaims seek specific performance of loan requirements.  (The counterclaims seek to enforce loan requirements that state laws must be complied with, *see, e.g.*, counterclaim at ¶17, and ask the court to order the USDA to perform its contractual duties with respect to graduation requirements.  *See, e.g.*, counterclaim at ¶ 53.) However, careful reading of <u>Robbins</u> and the D.C. Circuit cases approved in that decision, *see* <u>Robbins</u> at 1083-84, convinces the court that where a non-contractual basis for such specific performance claims is alleged (and ultimately proven), there is no implied non-waiver of sovereign immunity under the Tucker Acts.  *See, e.g.*, <u>Albrect v. Comm. on Employee Benefits</u>, 357 F.3d 62, 69 (D.C. 2004), described parenthetically in <u>Robbins</u> at 1084, as a case "concluding the APA waiver did not apply to plaintiff's breach of fiduciary duty claim because that claim turned *entirely* on the terms of the contract." (Emphasis in original).  Here, the city's counterclaims seek to enforce requirements which are alleged to have a source in the federal regulations as well as in the loan documents.  *See, e.g.*, counterclaim at ¶16 alleging regulations that require compliance with state laws as condition to disbursement of funds; ¶ 38.3 alleging documents that reference review of the loans for graduation purposes as required by regulations.  Thus, although the court recognizes that the independent source of the claim in <u>Robbins</u> was constitutional as opposed to regulatory, the city's counterclaims are not excluded from the broad waiver of immunity provided by § 702 because the counterclaims are alleged to have a non-contractual source in the federal regulations.

USDA which are challenged by the city's counterclaims are the USDA's failure to comply with state and federal laws in extending the loans in question, and the USDA's failure to perform its duties with respect to graduation requirements for the loans. These are specific actions (and failures to act). As for finality and exhaustion, the court finds that the city is not required to exhaust administrative remedies because the city entities are not "participants" within the meaning of the review scheme relied upon by the USDA and the water district.[6] *See*, <u>Melissa Industrial Development Corporation v. North Collin Water Supply</u>, 256 F. Supp. 2d 557, 562 (E. D. Tex. 2003), quoting <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 149-50 (1967) (APA's "flexible and pragmatic" finality requirements were met by city bringing an action against a water service association and the USDA, seeking to block the USDA's loan to the water district).

### 3.  <u>Standing</u>

There are two aspects of standing under the APA, strict Article III standing and the judicially created doctrine of prudential standing. *See*, <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975) (standing inquiry involves constitutional limitations on federal court jurisdiction and prudential limitations on its exercise). Although it is not clear whether the USDA challenges standing under the requirements of Article III or only under the doctrine of prudential standing, this order addresses both.

---

[6]In support of its exhaustion argument, the USDA cites the statutory scheme for administrative review codified at 7 U.S.C. §§ 6991-6999. That review scheme allows a "participant" to appeal an adverse decision of the Department of Agriculture. "Participant" is defined as "any individual or entity who has applied for, or whose right to participate in or receive a payment, loan, loan guarantee, or other benefit in accordance with any program of an agency to which the regulations in this party apply, is affected by a decision of such agency." 7 C.F.R. § 11.1

(a).  Article III Standing

To adequately allege standing under Article III of the United States Constitution, the city must meet three requirements.  First, the city's counterclaims must allege that the city has suffered an injury in fact, that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical.  Lujan, 504 U.S. at 560.  Second, the city must allege a causal connection between the alleged injury and the challenged conduct.  Id. at 560-61.  Third, the city must demonstrate redressability, which means that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision on the city's counterclaims.  Id. at 561.  This order applies these requirements first to the "contract is void counterclaims" and then to the "graduation counterclaims."

The city's first set of counterclaims, its "contract is void counterclaims," allege that as a result of the illegal actions or failures to act of the USDA, the district has entered into illegal loans.  For example, the counterclaims request the court to enter an order "declaring that complying with state law is a contractual condition precedent upon which funding is based...and that...the District has failed to meet a condition precedent for § 1926(b) funding...."  (Counterclaim, doc. no. 21 at ¶ 44.)  As a result of the allegedly illegal loans which invoke the exclusivity provisions of § 1926(b), the city further alleges that the water district has improperly monopolized water sales in the subject area.  (See, counterclaim at ¶ 44.)  The entire drift of the city's counterclaim is that as a potential competitor to the water district, the city has been wrongly foreclosed from water sales due to the USDA and the water district's improper conduct.  For example, the city alleges that through the "unauthorized and illegal actions" of the USDA and the water district, the parties have "engaged in efforts to compete with" the city, and "interfered with or attempted to interfere with

[the city's] water sales to [the city's] existing water services customers."
(Counterclaim at ¶¶ 59, 60.)

These alleged injuries are concrete and particularized, not hypothetical. These
injuries have a causal connection to the USDA's alleged actions (and inaction)
concerning issuance of the loans. A ruling in favor of the city on these counterclaims
will redress the city's injuries because it will void the allegedly illegal loans and the
water district will no longer be entitled to exclusivity under 7 U.S.C. § 1926(b),
presumably permitting sales by the city which are now foreclosed. The court
concludes that the city has Article III standing to allege its "contract is void
counterclaims." *See*, City of College Station v. United States Department of
Agriculture, 395 F. Supp. 2d 495, 502 (S.D. Tex. 2005) (city had Article III standing
to bring action seeking to enjoin USDA from funding loan to rural water association);
Melissa, 256 F. Supp. 2d 557, 565-66 (city had Article III standing to allege that the
water district, its competitor, did not have the proper authority to apply for a loan or
grant which would have shut the city out of the water market for four decades,
although in that case the plaintiffs were also holders and owners of membership
interests in the water district).

With respect to the city's second set of counterclaims, the "graduation
counterclaims," the city seeks, first, to enforce loan terms and federal policies and
regulations which require the loans to be evaluated for possible graduation. The
counterclaims allege the pertinent loan terms which require graduation of the loans in
certain instances, such as when it appears that the water district may be able to obtain
a loan from a responsible cooperative or private credit source at reasonable rates and
terms. (*See, e.g.*, counterclaim at ¶36.) The counterclaims ask the court to enter
judgment requiring the parties "to perform [their] duties and obligations under the
graduation requirements of [the] loans...." (Counterclaim at ¶53.) Essentially, the

city alleges that as a result of the parties' failure to review the loans for graduation purposes, the city is foreclosed from competing with the district and has lost water sales within the subject area. (*See*, counterclaim at ¶¶ 59, 60, alleging that through their "unauthorized and illegal actions" the parties have "interfered with or attempted to interfere with the [city's] water sales to the [city's] existing water services customers.")

These above-described injuries to the city's ability to compete for the subject water sales are injuries which are particular, and actual and imminent. They are also injuries allegedly caused by the USDA's alleged failure to conduct the required review, and they are injuries which are redressable by an order requiring the USDA to conduct the required review. The city's "graduation counterclaims" also go farther, however, and seek a declaration that the city is *now* entitled to have the loans in question retired or refinanced. In response to these claims for relief, the water district argues that "if the City is entitled to any relief at all on its Graduation Claims against the USDA, such relief is limited to directing the USDA to conduct its review, not compel graduation." (District's response brief, p. 11.)

The court agrees with the water district that the city's allegations, if proven, do not establish that the city is now entitled to have the loans retired or refinanced. The Supreme Court has recognized, however, that parties may allege a violation of concrete procedural rights without the usual showing of redressability or immediacy. Lujan, 504 U.S. at 572, n.7. Applying that rationale here, the city should not be held to lack Article III standing to allege that it may ultimately be entitled to have the loans retired or refinanced, just because the city cannot now show that it is entitled to this ultimate relief, where the city is precluded from now making that showing by the opposing parties' alleged failure to undertake the necessary procedural steps to review the loan for graduation purposes.

The court concludes that all of the city's counterclaims satisfy Article III.

(b).  Prudential Standing

The next question is whether the counterclaims satisfy the requirements of prudential standing.

The first sentence of § 702 of the APA grants standing to a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  The Supreme court has recognized, however, that although the APA should be construed "not grudgingly but as serving a broad remedial purpose," the Congress, in enacting § 702, "had not intended to allow suit by every person suffering injury in fact." Clarke v. Securities Industry Association, 479 U.S. 388, 395 (1987) (recounting Supreme Court jurisprudence regarding standing under the § 702).  Determining that what was needed "was a gloss on the meaning of § 702," the Court supplied this gloss by adding to §702's requirements, the additional requirement that "the interest sought to be protected by the complainant [be] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."  Id. at 395-96.

Although the Supreme Court has approved a trend toward the enlargement of the class of people who may protest administrative action, id. at 397, there are limits to how far this zone of interests doctrine will stretch.  For example, the Supreme Court has "implicitly recognized the potential for disruption inherent in allowing every party adversely affected by agency action to seek judicial review." Id. The Court has struck the balance "in a manner favoring review, but excluding those would-be plaintiffs not even arguably within the zone of interests to be protected or regulated by the statute." Id. Specifically, the Court has been concerned that plaintiffs be excluded from standing "whose suits are more likely to frustrate than to further statutory objectives." Id. at n.12.

The zone of interest test is a guide for deciding whether in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain about a particular agency decision. *Id.* at 399.  "In cases where the plaintiff is not itself the subject of the contested regulatory action," as the city is not here, "the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.*  "The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff."  *Id.* at 399-400.

The city argues that its counterclaims come within the zone of interests protected by 7 U.S.C. § 1926(b).  The Tenth Circuit has stated that "Congress enacted 7 U.S.C. § 1926(b) as part of a federal statutory scheme to extend loans and grants to certain associations providing...water service...to farmer, ranchers, and other rural residents." Sequoyah County Rural Water District No. 7 v. Muldrow, 191 F.3d 1192, 1196 (10th Cir. 1999), quoting Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2, 861 F.2d 1211, 1214 (10th Cir. 1988).  More particularly, the Tenth Circuit recognizes two specific purposes of § 1926(b).  First, "[t]he legislative history of section 1926(b) demonstrates that Congress intended to protect rural water districts from competition in order to encourage rural water development." Sequoyah, 191 F.3d at 1196 (emphasis added; citations omitted).  Second, "[section] 1926(b) was intended to provide greater security for the federal loans made under the program." Sequoyah, 191 F.3d at 1196 (quotations and citations omitted).  *See also*, Pittsburgh County Rural Water District No. 7 v. City of McAlester, 358 F.3d 694, 715 (10th Cir. 2004) (repeating the purposes of § 1926(b) as identified in Sequoyah and stating that the statute also had an interest in promoting rural water development by expanding the number of potential users of such systems thereby decreasing the per-user cost).

Rather than an interest which would "protect the rural water districts from competition," Sequoyah at 1196 (emphasis added), the city's counterclaims seek to subject the water district to competition. Rather than "providing greater security" for the federal loans, Sequoyah at 1196, the city's counterclaims challenge the security of the loans by potentially reducing the number of residents served by the district and thus reducing potential security for the loans. Thus, the city's interests as alleged in the counterclaims are adverse to the congressional purposes of §1926(b) as those purposes are recognized in this circuit. The court concludes that the city does not come within the statute's zone of interests for purposes of prudential standing.

Other decisions involving competitors and competition, and which are discussed in Clarke, confirm this conclusion. Clarke, 479 U.S. at 395-97. See, e.g., Clarke's discussion of Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150 (1970) (legislative history indicated that Congress intended to enforce adherence to the accepted public policy which strictly limits banks to banking; the Court held that data processing companies were therefore sufficiently within the zone of interests to have standing to challenge a ruling by the comptroller which said that national banks could make data processing services available to other banks and to bank customers); and see, Clarke's discussion of Investment Company Institute v. Camp, 401 U.S. 617 (1971) (investment companies sought review of comptroller's regulation that authorized banks to operate collective investment funds, arguing the regulation violated the Glass-Steagall Banking Act of 1933 which prohibits banks from underwriting or issuing securities; the Court responded to the challenge to plaintiffs' standing by holding that the plaintiffs not only suffered actual injury, but that, as in Data Processing, they suffered injury from the competition that Congress had arguably legislated against by limiting the activities available to national banks). Unlike the city's alleged competitive injuries in the instant action, the competitive

injuries alleged by the plaintiffs in the above-cited cases were injuries which were *consistent* with the zone of interests protected by the Congress when it passed the acts in question.

The Exchange Bank v. The Director of the Office of Thrift Supervision, 29 F. Supp. 2d 1272 (N.D. Okla. 1998), is also especially instructive. In Exchange Bank, the court found that a competing bank lacked prudential standing to challenge an order of the Office of Thrift Supervision which authorized a newly chartered savings association to open a branch office. Although the competing bank argued that it was within the zone of interests protected by the statute and its regulations, the court held that the competing bank's interests were "contrary to the purposes of the Act" because the competing bank was interested in limiting competition, while the policy furthered by the Act was one which favored competition. *Id*. at 1277. Exchange Bank analyzed the Supreme Court's competition cases and then determined (as this court has now also determined) that standing in those cases was based on the plaintiffs' "like interest of limiting competition in their particular market...." *Id*. at 1277. Exchange Bank states that, by contrast, in the case before it, the plaintiffs' purpose, which was to limit competition, was a purpose which was "contrary to the very purpose of the Act" in question (the Community Reinvestment Act). *Id*. Based on this reasoning, Exchange Bank held that the plaintiffs lacked prudential standing under the APA. *Id*.[7]

The court is aware that at least two Texas decisions (cited by the city) which have held that prudential standing exists for plaintiffs positioned similarly to the city.

_____

[7]The city appears to argue that its interest is a "like interest" because "[t]he statutory and regulatory schemes" in issue here are "intended to severely limit and/or restrict the ability of water services provider to obtain Section 1926(b) monopoly protection." (Response brief, p. 16.) In actuality, any policy in favor of limiting the availability of the loans in question comes solely from departmental regulations, however, not from any statutory regulatory scheme.

The first, <u>City of College Station</u>, 395 F. Supp. 2d at 503, cites language from a Fifth Circuit eminent domain case, <u>City of Madison v. Bear Creek Water Association, Inc.</u>, 816 F.2d 1057 (5th Cir. 1987), which stated that an "effect" of § 1926(b) was "to foster a cooperative effort between local and federal authorities."  Based on that language, <u>City of College Station</u> concludes that College Station's "interest in future growth is not merely marginally related to or inconsistent with the purposes of §1926(b)."  <u>City of Madison</u>, the Fifth Circuit case which <u>City of College Station</u> reasoned from, however, did not state that a <u>purpose</u> of § 1926(b) was to foster cooperation between local and federal authorities; <u>City of Madison</u> merely noted that "the overall effect" of the statute was "not so much to infringe the city's sovereign power as to foster a cooperative effort between local and federal authorities." <u>City of Madison</u>, 816 F.2d at 1061.  In any event, to infer an implicit congressional purpose of <u>fostering</u> cooperation between local and federal authorities from the <u>exclusionary</u> language of §1926(b) (as the <u>College Station</u> court did), is, in the opinion of this court, a purely imaginative exercise.

The other Texas case which holds that a municipality has prudential standing to challenge a water district's loan application, is <u>Melissa</u>, 256 F. Supp. 2d at 566-67. <u>Melissa</u> reasons from federal regulations which limit the availability of the USDA's loans to water districts.  Finding that these regulations further federal policies of protecting federal funds and encouraging competition in the marketplace, <u>Melissa</u> states that plaintiffs have standing "to police/enforce the statute's <u>regulations</u>." <u>Melissa</u>, 256 F. Supp. 2d at 567 (emphasis added).  In other words, <u>Melissa</u> bootstraps its conclusion that the municipality comes within the zone of interests protected by the <u>statute</u>, to its conclusion that the municipality comes within the zone of interests protected by the <u>regulations</u>.  Supreme Court decisions regarding prudential standing, however, reason primarily from  <u>Congress</u>' intent when it passed the <u>legislation</u> in

question, not from purposes arguably served by federal regulations adopted later by an executive branch department. *See*, Clarke, 479 U.S. at 399 ("The essential inquiry is whether Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law.").  Assuming for purposes of argument that federal regulations are one factor to be considered in interpreting the arguable zone of interests protected by a statute such as § 1926(b), this court finds that any relationship between § 1926(b) and the city which might be illuminated by the regulations cited in the city's counterclaims is marginal at best.

This court also questions the Melissa ruling on prudential standing because it appears to be based on that court's conclusion that "the Plaintiffs have an interest in ensuring that only a financially needy competitive water supplier is able to capture their potential customers...." Melissa, 256 F. Supp. 2d at 567 (emphasis added).  That statement is surely true for the plaintiffs in Melissa, as it is also surely true for the city in the instant case.  The test for prudential standing, however, is not whether "the plaintiffs" have "an interest" in policing the statute; the test is whether the interest which the plaintiffs have is one which it is reasonable to think was implicitly protected by Congress when it passed the act in question.  *See*, Clarke, 479 U.S. at 397 (noting the Court "has implicitly recognized the potential for disruption inherent in allowing every party adversely affected by agency action to seek judicial review").[8]

Finally, as the USDA and the water district point out in their briefing, the plaintiffs in Melissa were also holders and owners of membership interests in the

---

[8]In a vein similar to the Melissa court's, the city's argument (response brief, p. 15) suggests that any type of "plausible relationship to the policies underlying the statute" is enough to confer standing.  The analysis in Clarke, however, makes it clear that a plausible relationship which is sufficient for purposes of standing is a plausible relationship which is not adverse, or merely marginal, to the policies underlying the statute.

water district association, a fact noted by that court in its discussion of Article III standing.  <u>Melissa</u>, 256 F. Supp. 2d at 560, 566.

In short, despite its awareness of differing views on the subject, the court finds that there has been no showing in this case that it is reasonable to assume that Congress intended the city, as a potential competitor to the water district, to be an entity which should be able to litigate the USDA's alleged disregard of the law with regard to the types of matters alleged in the city's counterclaims.  As this is "the essential inquiry" with regard to prudential standing,  <u>Clarke</u>, 479 U.S. at 399, the court concludes that the city does not have prudential standing to litigate this set of counterclaims.   As stated in <u>Clarke</u>, "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  <u>Clarke</u>, 479 U.S. at 399.  That is the case here, where the city's interests as alleged in the counterclaims "are more likely to frustrate than to further statutory objectives".  *Id*. at 397, n.12.

For all of these reasons, the court concludes that the city lacks prudential standing under the APA to maintain any of its counterclaims against the USDA.

### III.  Impact of Determination

The above determination means that the USDA is entitled to be dismissed from the city's counterclaims.  That determination, in turn, impacts the city's ability to allege its counterclaims against the water district.  As the water district argues in its response brief, citing Wright, Miller & Kane, 7 <u>Fed. Prac. & Proc. Civ.3d</u>, § 1617, the applicable rule is as follows.

> The principles of Rule 19 regarding the desirability of joining nonparties needed for a just adjudication and the indispensability of some of those persons whose joinder is not feasible are fully applicable to actions

involving the United States.  When an interest of the federal government is involved in a suit and a judgment cannot be rendered without affecting that interest, the government must be made a party to the action.  If that is not feasible, the United States may be regarded as an indispensable party under Rule 19(b) and the action dismissed.

The court has previously determined that in light of the breadth of the relief sought by the city in its counterclaims, the USDA is a necessary party for purposes of those counterclaims.  For the reasons stated in the district's response brief (at pp. 11-14), and for the reasons previously stated by this court in its order which ruled that the USDA should be joined as a necessary party in this litigation (doc. no. 22 in CIV-06-0035), the court now concludes that because the city cannot bring its counterclaims against the USDA, the city also cannot bring its counterclaims against the water district.  Accordingly, the result of the court's determination that the city lacks prudential standing to bring its counterclaims against the USDA, is that the city's counterclaims must be dismissed *in toto*.[9]

## IV.  Rulings

After careful consideration of the parties' submissions and the relevant legal authorities, the court rules as follows.

The United States Department of Agriculture's motion to dismiss is **GRANTED**.  The counterclaims alleged by the City of Elk City and by the Elk City Public Works Authority against the United States Department of Agriculture and

---

[9]It does not follow that all of the issues presented by the city's counterclaims are no longer present for resolution in this action.  As alleged in the city's answer, the city's defenses to the water district's claims include the city's argument (previously alleged as its "contract is void" set of counterclaims) that the loans are invalid under Oklahoma law and federal law.  Although the city is no longer able to use these arguments to seek affirmative relief in its favor, the validity of the loans remains to be determined as a defense to the water district's claims of infringing water sales by the city.

against the Beckham County Rural Water District No. 3 are **DISMISSED** without prejudice for lack of prudential standing under the Administrative Procedures Act.

Because the United States Department of Agriculture has moved for dismissal from this action, the court presumes the USDA does not wish to join in the water district's claims against the city. Accordingly, the USDA is **DISMISSED** from this action for all purposes.

This action is set for conference, in chambers, on the court's April 5, 2007 status and scheduling docket, at 11:15 a.m. The parties are excused from preparing a joint status report but should come prepared to discuss the most expeditious sequence for resolution of all remaining claims and issues. Specifically, the parties should consider the feasibility of bi-furcating the issue of the legality of the loans (an issue now raised by the city's defenses to the water district's claims), and the possibility of an interlocutory appeal with regard to that issue. The city should also come prepared to discuss which of the 49 separately numbered defenses alleged in its answer it intends to press.

Dated this 6th day of March, 2007.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-1485p0010(pub).wpd

-22-